1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7

8   KIMBERLY BEAGLE,

9          Plaintiff,                              No. C 08-1517 PJH

10   v.                                            **ORDER GRANTING DEFENDANT'S**
                                                   **MOTION FOR SUMMARY JUDGMENT**
11   RITE AID CORPORATION,                         **IN PART AND DENYING IT IN PART**

12          Defendant.
    _____/

13

14          The motion of defendant Rite Aid Corporation ("Rite Aid") for summary judgment

15   came on for hearing before this court on September 16, 2009.  Plaintiff Kimberly Beagle

16   appeared by her counsel Mark S. Adams, and Rite Aid appeared by its counsel Annmarie

17   M. Liermann.  Having read the parties' papers and carefully considered their arguments

18   and the relevant legal authority, and good cause appearing, the court hereby GRANTS the

19   motion in part and DENIES it in part.

20                              **BACKGROUND**

21          Plaintiff was employed as a Clerk at the Rite Aid store in Fortuna, California, from

22   August 1998 until April 2007.  Chris Young ("Young") began working at the Fortuna store as

23   an Ice Cream Scooper in about 2000.  Plaintiff alleges that within the first year that Young

24   began working in the store, she was subjected to his derogatory sexual behavior and

25   comments, which she contends resulted in a "sexually charged work environment."

26   Plaintiff asserts that Young "checked out" or "ogled" young women who entered the store;

27   that he repeatedly referred to his right arm as his "jack-off muscle;" that he complained on a

28   number of occasions that he never "got laid;" that he stared at plaintiff's breasts on at least

1   one occasion that she could recall; that he commented to her on one occasion that her

2   boyfriend was "lucky;" and that on another occasion, he put a large piece of wood between

3   his legs and asked her, "Do you want some of my wood?"

4       Plaintiff contends that on at least ten occasions, she complained about the "jack-off

5   muscle" comments to Lezzlee Pough ("Pough"), the Fortuna store's Assistant Manager,

6   and that she also complained to Pough about the "wood" comment.  She asserts that

7   Pough herself heard Young make the "jack-off muscle" comments, and that Pough

8   witnessed Young "ogling" the female customers, and was aware that Young referred to

9   certain female customers as "hot" and commented about their breasts.

10       Plaintiff asserts that rather than responding to these issues by taking action to stop

11   Young's harassment, Rite Aid instead promoted Young to the position of Shift Supervisor in

12   April 2005.

13       Then came the "Photo Department incident."  Plaintiff alleges that on Wednesday,

14   July 6, 2005, Young observed two young women enter the store, and made sexually

15   suggestive remarks about them.  After the young women had left the store, plaintiff was

16   bending over to pick up a pen she had dropped on the floor of the Photo Department.

17   Plaintiff asserts that as she did so, Young pushed her head down in between his legs,

18   stating, "I like you better down there," or words to that effect.  Plaintiff managed to extricate

19   herself, and shortly thereafter clocked out to go home, as it was the end of her shift.

20       On Friday, July 8, 2005, shortly before noon, plaintiff reported the Photo Department

21   incident to the store manager, Leon Comerer ("Comerer").  Although Rite Aid admits that

22   what it terms "sexual joking" was prevalent in the Fortuna store, Comerer claims to have

23   been unaware of any such sexual joking prior to this incident.

24       Plaintiff claims that Comerer did not take her complaint seriously.  He told her to get

25   to work, and said that he was leaving that day to go on vacation and would deal with her

26   complaint when he returned.  After Comerer left the store, plaintiff clocked in for work.

27   Young reported for work approximately 15 minutes later.  Plaintiff asserts that it was

28   obvious to her that no one had "done anything" about Young.

United States District Court

For the Northern District of California

1    Plaintiff called her union representative, Ernie Behm ("Behm"), who told her she had

2    the right to refuse to work with Young until something was done.  Plaintiff then told Shift

3    Supervisor Cinda Hussey ("Hussey") that she would not return to work until Young was

4    gone.  Plaintiff claims that Hussey became angry that she was refusing to work.

5    Plaintiff alleges that as a result of Young's action of pushing her down while she was

6    trying to stand up, she experienced aggravation of an old neck injury.  On Saturday, July 9,

7    2005, plaintiff went to the doctor for treatment of the injury, as either her union

8    representative or a Rite Aid supervisor had told her she needed a doctor's note to be

9    excused from work.  The emergency room doctor allegedly contacted the police.  The

10   police then contacted plaintiff, and she went into the office of the Fortuna Police

11   Department on July 10, 2009 to make a report.

12   On the morning of the next business day, Monday, July 11, 2005, Rite Aid Human

13   Resources Manager Steve Shipman ("Shipman") first learned of plaintiff's complaint

14   regarding the Photo Department incident from an e-mail sent by Hussey.  Shipman asserts

15   that this was also the first time he had ever heard of any complaint of harassment from the

16   Fortuna store.

17   Plaintiff was surprised that this was the first time Shipman had learned of the Photo

18   Department incident.  She had anticipated that something would be done when she

19   reported it to Comerer on July 8, and she considers the delay until July 11 to be a failure to

20   take "immediate action."

21   Shipman began his investigation that same day by attempting to reach plaintiff by

22   telephone, and by speaking with Young and Hussey.  Shipman also obtained a written

23   statement from Young in which Young denied making the statement that plaintiff described,

24   but admitted putting his hand on plaintiff's head and saying, "No, wait," or "Hey, there."

25   Plaintiff had been excused from work by her doctor, and Young was on vacation

26   between July 17 and July 24.  Shipman states that he was aware of those two

27   circumstances, and so saw no need to suspend Young during the investigation.

28   On July 21 and 22, 2005, Shipman interviewed and received written statements from

1   seven Fortuna employees, regarding the Photo Department incident and regarding working

2   for/with Young.  Shipman also requested and received a statement from Comerer.  During

3   Shipman's conversations with the employees, he informed each of them that the casual

4   joking of a sexual nature that appeared to be pervasive in the Fortuna store could not

5   continue.  He also re-trained Comerer and Pough on Rite Aid's sexual harassment policy

6   on July 22, 2005.

7         Also on July 22, 2005, Shipman interviewed plaintiff in the presence of her union

8   representative, Behm, as she had refused to speak to Shipman otherwise.  Plaintiff told

9   Shipman that on July 6, 2005, Young had put his hand on her head and pushed down,

10  saying, "I like you better down there."  She also told Shipman of the "wood" comment and

11  stated that Young had made other "sexual comments."  At the conclusion of the meeting,

12  Shipman anticipated that plaintiff would take her one-month, pre-planned vacation, and

13  would then return to work at the Fortuna store as before.

14        On July 26, 2005, while plaintiff was on vacation, Shipman made the decision to

15  terminate Young, effective that day, for his inappropriate conduct in violation of Rite Aid's

16  sexual harassment policy.  Shipman also decided to make Young ineligible for rehire in the

17  Rite Aid system.  Plaintiff testified in her deposition that she learned of Young's termination,

18  and assumed that it had resulted from her complaint.

19        Notwithstanding the above, plaintiff alleges that Rite Aid failed to take appropriate

20  action following the Photo Department incident, and failed to communicate with her.  For

21  example, she asserts that Rite Aid did not notify her when Young was fired, and did not tell

22  her that it disapproved of Young's conduct or advise her that she could file for worker's

23  compensation.  Nor, according to plaintiff, did Rite Aid contact her about her return to work.

24        Plaintiff asserts further that she was subjected to harassment and retaliation

25  because of her complaints about Young.  She contends that Rite Aid failed to step in and

26  educate its employees about sexual harassment, and that after her complaint about the

27  Photo Department incident, Rite Aid trained only the supervisors and managers, not all the

28  employees at the Fortuna store.

**United States District Court**
For the Northern District of California

1     In the meantime, plaintiff claims, store employees gossiped about her complaints

2   and her medical condition, and soon her complaints were well-known throughout the small

3   town of Fortuna.  Plaintiff claims that some of the employees blamed her for complaining of

4   sexual harassment, and many (including Comerer) believed that Young should not have

5   been fired.

6     Hussey testified in her deposition that the atmosphere was "hostile" toward plaintiff

7   and stated that she believed that plaintiff should not return to the store.  Plaintiff's union

8   representative, Behm, allegedly confirmed that the Fortuna store had "turned hostile"

9   toward plaintiff.  Plaintiff claims that she began to fear for her own safety when leaving her

10   home, and that she was anxious that she might see Comerer or other store employees.

11     Plaintiff asserts that store management retaliated against her for taking time off from

12   work, and questioned the veracity of her claim that she had been physically and

13   emotionally harmed by Young's actions.  Specifically, she claims that in August 2005, she

14   returned to the Fortuna store to drop off her doctor's notes to the supervisor on duty.  She

15   claims that she remained in the car and had her passenger bring the notes into the store;

16   and that Hussey came out and accused her of forging the signature on the notes, and then

17   took the notes and threw them back in the car at her.

18     During this time, plaintiff remained on a leave of absence.  She claims that as a

19   result of the alleged harassment and retaliation, she developed post-traumatic-stress

20   disorder, anxiety, depression, trouble sleeping, panic attacks, and feelings of

21   abandonment.  She states that she also was diagnosed with neck sprain and received

22   physical therapy.

23     According to Shipman, when plaintiff returned from vacation in August 2005, she

24   communicated through Behm that she did not want to return to work at the Fortuna store.

25   Shipman asserts that he asked Behm to obtain a request from plaintiff for a transfer to the

26   Eureka store (the store closest to Fortuna).  Shipman wanted plaintiff to make the request,

27   because he was trying to avoid the appearance of retaliation.  According to Shipman, Behm

28   told him that plaintiff refused to supply the request.

**United States District Court**
For the Northern District of California

1      Plaintiff claims that she requested a transfer to the Eureka store in December 2005.

2  She contends that Shipman told her a transfer would be "complicated" and "likely

3  impossible," but that he would get back to her.  She claims that she never heard any other

4  response to her request until over a year later.

5      On June 9, 2006, plaintiff filed a charge of discrimination with the California

6  Department of Fair Employment and Housing ("DFEH"), alleging sexual harassment and

7  sexual discrimination.  She alleged that between February 1, 2005 and July 6, 2005, she

8  was sexually harassed (verbally and physically) by Young.  She stated that Young had

9  admitted the harassment, and that she believed he had been terminated in August 2005.

10      As part of an offer of settlement of the DFEH claim, Rite Aid offered to transfer

11  plaintiff to the Eureka store.  Shipman states that in August 2006, he learned that plaintiff

12  had refused the offer.  Plaintiff states in her opposition to Rite Aid's motion that she

13  understood that the transfer would be contingent on a dismissal of all her claims, including

14  the claim for compensation she was seeking for medical expenses.

15      On August 31, 2006, Shipman sent plaintiff a letter, via certified mail with return

16  receipt requested, offering plaintiff a transfer to the Eureka store, without making the offer

17  contingent on plaintiff's dismissing the DFEH charge, and stating that the offer would be

18  kept open for 30 days.  Although Shipman received the signed delivery receipt, he never

19  received a response to the offer.

20      In her opposition to Rite Aid's motion, plaintiff claims that notwithstanding the

21  statement by Shipman and the signed receipt, she never received any such letter and did

22  not sign the receipt.  In her deposition, however, she testified that she did not recall

23  whether she had received the August 31, 2006 letter.  She recalled receiving a letter from

24  Rite Aid saying that she had to do "something" within 30 days, but she claimed that she did

25  not do the "something" because DFEH told her that if she did, she would not receive money

26  from Rite Aid for her unpaid medical bills, which she was seeking as part of the settlement

27  for her DFEH claim.

28      On February 7, 2007, plaintiff filed an amended charge with DFEH.  On April 3,

6

2007, DFEH closed the file and issued a right-to-sue letter.  As of April 2007, plaintiff had been on leave for nearly two years.  Rite Aid's policies allow for only a 6-month leave for medical reasons in the absence of an open worker's compensation claim.

Shipman states that in light of plaintiff's failure to respond to the August 31, 2006 offer to transfer her to Eureka, and in light of the lack of any contact from plaintiff since then, he had no indication that plaintiff intended to work any longer at Rite Aid.  After learning that plaintiff's worker's compensation claim had closed in January 2006, Shipman decided on April 24, 2007 to terminate plaintiff's employment for exceeding the company's allowable leave of absence period, though he did designate plaintiff as eligible for rehire.

On March 19, 2008, plaintiff filed the present action against Rite Aid.  In the original complaint, plaintiff asserted 12 causes of action.  Among other things, she alleged that Rite Aid had terminated her "on or about April 2007, or approximately five days after DFEH closed their investigation of [her] claims."

On May 14, 2008, more than a year after Rite Aid had terminated her employment, plaintiff filed another administrative charge, alleging discriminatory and retaliatory termination.  DFEH issued a right-to-sue notice on May 23, 2008.

On June 5, 2008, the court granted Rite Aid's motion to dismiss the second cause of action for disability harassment, on the ground that plaintiff had failed to exhaust administrative remedies as to that claim.

On October 28, 2008, plaintiff filed the first amended complaint, alleging 11 causes of action under California law – (1) sexual harassment, in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, et seq. ("FEHA"); (2) sex discrimination (FEHA); (3) failure to prevent discrimination and harassment (FEHA); (4) retaliation for opposing discrimination and harassment (FEHA); (5) wrongful termination in violation of public policy (based on public policy in FEHA and the California Constitution); (6) retaliation, in violation of California Labor Code § 1102.5; (7) assault; (8) battery; (9) sexual assault and battery; (10) intentional infliction of emotional distress; and (11) invasion of privacy (California Constitution and common law).

7

**United States District Court**
For the Northern District of California

1                          **DISCUSSION**

2   A.     Legal Standard

3         Summary judgment is appropriate when there is no genuine issue as to material

4 facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

5 Material facts are those that might affect the outcome of the case. Anderson v. Liberty

6 Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there

7 is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

8         A party seeking summary judgment bears the initial burden of informing the court of

9 the basis for its motion, and of identifying those portions of the pleadings and discovery

10 responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp.

11 v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof

12 at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

13 than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

14 888 (9th Cir. 2003).

15         On an issue where the nonmoving party will bear the burden of proof at trial, the

16 moving party can prevail merely by pointing out to the district court that there is an absence

17 of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the

18 moving party meets its initial burden, the opposing party must then set forth specific facts

19 showing that there is some genuine issue for trial in order to defeat the motion. See Fed.

20 R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

21   B.     Rite-Aid's Motion

22         Rite Aid seeks summary judgment as to all causes of action alleged in the first

23 amended complaint, or, in the alternative, partial summary judgment.

24         1.     Retaliation (fourth and sixth causes of action)

25         Rite Aid argues that the retaliation claims fail because plaintiff cannot establish a

26 prima facie case, and that even if she can establish a prima facie case, she has no

27 evidence that Rite Aid's articulated reasons for its actions were pretextual.

28         FEHA prohibits retaliation for opposing any practices forbidden by FEHA or for filing

1    a complaint of discrimination.  Cal. Gov't Code § 12940(h).  The California Labor Code

2    prohibits an employer from retaliating against an employee for disclosing information to a

3    government or law enforcement agency, where the employee has reasonable cause to

4    believe that the information discloses a violation of state or federal statute, or violation or

5    noncompliance with a state or federal rule of regulation.  Cal. Labor Code § 1102.5(b).

6         To determine whether the retaliation claims raise triable issues, the court applies the

7    burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First,

8    plaintiff must establish a prima facie case of retaliation by showing that she engaged in

9    protected activity, that Rite Aid subjected her to an adverse employment action, and that

10   there was a causal link between the protected activity and Rite Aid's action.  See McRae v.

11   Department of Corrections and Rehabilitation, 142 Cal. App. 4th 377, 386 (2006) (FEHA);

12   Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007) (Cal. Lab. Code § 1102.5).

13        If plaintiff succeeds in establishing a prima facie case, the burden of production

14   shifts to Rite Aid to articulate a legitimate, nondiscriminatory reason for its actions.  The

15   plaintiff bears the ultimate burden of showing that Rite Aid's proffered reasons are

16   pretextual.  Patten v. Grant Joint Union High School Dist., 134 Cal. App. 4th 1378, 1384

17   (2005).

18        The court finds that the motion must be GRANTED.  While there is no dispute that

19   plaintiff engaged in protected activity, she has no evidence that she was subjected to an

20   actionable adverse employment action that materially affected the terms, conditions, or

21   privileges of employment or that there was a causal link between the protected activity and

22   any alleged adverse action.

23        Under California law, an adverse employment action is one that materially affects

24   the terms, conditions, or privileges of employment.  Yanowitz v. L'Oreal USA, Inc., 36 Cal.

25   4th 1028, 1036, 1051 (2005).  In Yanowitz, the California Supreme Court rejected the

26   definition of adverse employment action that has been adopted by the Ninth Circuit – which

27   is any action that would deter an employee from engaging in a protected activity.  See id. at

28   1036, 1050-52 & n.10 (applying "materiality" test in FEHA retaliation claim, and rejecting

United States District Court

For the Northern District of California

1  broader "deterrence" test); see also Patten, 134 Cal. App. 4th at 1387-88 (applying

2  Yanowitz "materiality" test in claim under § 1102.5).

3        Under the standard articulated in Yanowitz, trivial actions or conduct by fellow

4  employees that, from an objective perspective, are reasonably likely to do no more than

5  anger or upset an employee do not materially affect the terms, conditions, or privileges of

6  employment.  Id., 36 Cal. 4th at 1054 n.13.  Thus, the alleged ostracism and blame by

7  plaintiff's co-workers cannot be considered an adverse employment action under the

8  applicable definition of that term, because those actions did not materially affect the terms,

9  conditions, or privileges of plaintiff's employment.

10       In addition, plaintiff provides no evidence to support her assertion that her co-

11 workers retaliated against her for complaining of sexual harassment.  She claims, in vague

12 terms, that her fellow employees were "hostile" to her, and cites Hussey's comment that the

13 atmosphere in the Fortuna store was "hostile."  She also contends that some employees

14 even blamed her for complaining about harassment, and that Rite Aid allowed a "blame the

15 victim" mentality to "plague the workplace."

16       However, the evidence shows that plaintiff never returned to work after the Photo

17 Department incident.  Thus, there is no evidence that anyone "retaliated" against her in the

18 workplace, or that she experienced any "hostility" in the workplace.  And she provides no

19 evidence that any Rite Aid employee "retaliated" against her in any way outside the

20 workplace.[1]

21       As for her claim that Rite Aid was responsible for the alleged "retaliation" because it

22 failed to properly educate and train staff regarding sexual harassment, therefore failing to

23 take steps to "protect" her, plaintiff provides no evidence of this alleged failure to educate.

24 By contrast, Rite Aid has established that it had a company policy against sexual

25 harassment, that a copy of the policy was provided to all employees, and that all managers

26

27       [1]  Moreover, an action by one employee against another that occurs outside the
28 workplace cannot be considered an adverse employment action.  Thomas v. Department of
   Corrections, 77 Cal. App. 4th 507, 512 (2000).

United States District Court
For the Northern District of California

1   were trained in how to implement that policy.  The fact that Young behaved as he did is not

2   sufficient to support plaintiff's claim that Rite Aid failed to educate management and staff.

3   In addition, plaintiff provides no evidence that Comerer's beliefs and attitudes caused any

4   further harassment of her after she had reported the Photo Department incident.

5        The court finds further that the termination is not actionable as an adverse

6   employment action because plaintiff failed to timely exhaust her administrative remedies.

7   Under FEHA, an administrative charge must be filed within one year of the alleged act of

8   discrimination or retaliation.  Cal. Gov't Code § 12960(d); Romano v. Rockwell Int'l, Inc., 14

9   Cal. 4th 479, 492 (1996).  The failure to comply with this requirement bars the employee

10  from suing the employer under FEHA.  Id.  Section 1102.5 also contains an administrative

11  exhaustion requirement.  Campbell v. Regents of Univ. of Cal., 35 Cal. 4th 311, 333 (2005);

12  see also Steffens v. Regus Group, PLC, 2009 WL 1139543 at *2-6 (S.D. Cal., Apr. 28,

13  2009) (concluding that plaintiff asserting claim under § 1102.5 must exhaust by filing

14  administrative claim, whether with Labor Commissioner or with DFEH).

15       Under § 12960(d), the one-year period for filing a DFEH charge may be extended by

16  90 days where "a person allegedly aggrieved by an unlawful practice first obtained

17  knowledge of the facts of the alleged unlawful practice after one year from the date of their

18  occurrence."  Cal. Gov't Code § 12960(d)(1).  Plaintiff claims that here, she received no

19  notice of her termination, and actually did not discover the date of her termination until she

20  had filed the present action and after she had filed her second DFEH complaint.  Thus, she

21  argues, the 90-day exception applies and her termination also constitutes an adverse

22  employment action.

23       However, plaintiff cannot create a triable issue of fact by submitting a declaration

24  that contradicts her prior sworn testimony.  While plaintiff argues in her opposition to Rite

25  Aid's motion that she was unaware until after discovery commenced in the present action of

26  the actual date of her termination, she alleged in the original complaint that she was

27  terminated in April 2007, "approximately five days after the DFEH closed their investigation

28  of [her] claims," and also stated the same under penalty of perjury in the second (May

11

United States District Court

For the Northern District of California

1   2008) DFEH administrative charge.

2        Plaintiff also attempts to argue, for the first time here, that she was "constructively

3   discharged," and that constructive termination can constitute an adverse employment

4   action.  Plaintiff argues that a constructive termination claim is not subject to the defense of

5   failure to exhaust administrative remedies when the new claim is reasonably like or

6   reasonably related to the allegations in the original DFEH charge.

7        Constructive discharge is not a separate cause of action under California law but

8   rather is a device that allows a plaintiff to substitute a forced resignation due to objectively

9   intolerable conditions for an actual termination.  See Turner v. Anheuser-Busch, Inc., 7 Cal.

10  4th 1238, 1248 (1994).  In other words, an employer may be found liable for wrongful

11  termination for effectively forcing the employee to resign.

12       However, plaintiff has never before taken the position that she resigned (as opposed

13  to being terminated), and has never alleged the facts required to state a claim for

14  constructive termination.  Moreover, the evidence clearly shows that plaintiff was

15  terminated by Rite Aid – not that she resigned because her working conditions had become

16  intolerable.  Thus, plaintiff may not assert constructive discharge as an adverse

17  employment action.

18       Plaintiff's prima facie case also fails because she cannot establish a causal link

19  between either her original internal complaint about either the Photo Department incident

20  (July 2005) or the filing of the first DFEH charge (June 2006), on the one hand, and her

21  termination (April 2007), on the other, as the lapse of time between the protected activities

22  and the termination is too great to raise an inference of causation.  See Clark County Sch.

23  Dist. v. Breeden, 532 U.S. 268, 273 (2001) (20-month gap between filing EEOC complaint

24  and termination did not provide sufficient nexus); Cornwell v. Electra Central Credit Union,

25  439 F.3d 1018, 1035-36 (9th Cir. 2006) (8-month gap too long)).  As for plaintiff's claim that

26  causation can be shown by the fact that Rite Aid terminated her "[a]s soon as the DFEH

27  closed its file," the closing of the file by DFEH was not the exercise of a protected right by

28  plaintiff.  See Clark, 532 U.S. at 386; Cal. Gov't Code § 12940(h).

United States District Court

For the Northern District of California

1    Finally, even if plaintiff were able to establish a prima facie case, she cannot show

2    that Rite Aid's articulated reason for terminating her was pretextual.  Rite Aid contends that

3    the evidence shows that it terminated plaintiff after she had exceeded Rite Aid's allowable

4    leave of absence, and had given no indication that she would return to work, either in

5    Fortuna or in Eureka.  Plaintiff has provided no evidence to the contrary.  Indeed, plaintiff

6    testified in her deposition that she believed that Rite Aid had terminated her "for being gone

7    too long."

8          2.      Discrimination (second cause of action)

9    Rite Aid argues that plaintiff cannot establish a prima facie case of discrimination on

10   the basis of sex, for the same reason that she cannot establish a prima facie case of

11   retaliation – that is, she cannot show that she suffered an adverse action.  In addition, Rite

12   Aid asserts, even if plaintiff can establish a prima facie case, she has no evidence that Rite

13   Aid's articulated reasons for its actions were pretextual.

14   Discrimination cases based on circumstantial evidence also employ the McDonnell-

15   Douglas burden-shifting test.  See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 355 (2000).

16   The first step of this test – the prima facie showing of discrimination – requires the plaintiff

17   to provide evidence that she was a member of a protected class, that she was qualified for

18   the position sought or was performing competently in the position she held, that she

19   suffered an adverse employment action, and that the action occurred under circumstances

20   suggesting a discriminatory motive.  Id. at 355-56.  The remaining two steps are as

21   described above, in the discussion of retaliation.

22   The court finds that the motion must be GRANTED.  As set forth above, plaintiff has

23   no evidence of an actionable adverse action.  In addition, Rite Aid has articulated a

24   legitimate, non-discriminatory reason for plaintiff's termination (the only actionable "adverse

25   action"), and plaintiff has no evidence that the articulated reason was pretextual.

26         3.      Claim of wrongful termination in violation of public policy (fifth cause of

27                 action)

28   Rite Aid asserts that without evidence of a viable discrimination claim, plaintiff

13

United States District Court

For the Northern District of California

1   cannot prove wrongful termination in violation of public policy.  In opposition, plaintiff

2   asserts that Rite Aid did not move for summary judgment as to the fifth cause of action.

3       While it is true that Rite Aid did not state in its notice of motion that it was seeking

4   summary judgment as to the fifth cause of action, Rite Aid <u>did</u> argue in the body of its

5   motion that summary judgment should be granted as to the fifth cause of action because

6   plaintiff has no evidence of either sex discrimination or disability discrimination.

7       In order to prevail on a claim for wrongful termination in violation of public policy, a

8   plaintiff must prove that she was fired because she engaged in conduct protected by public

9   policy that is fundamental, firmly established, beneficial to the public, and embodied in a

10  constitutional or statutory provision.  <u>Turner</u>, 7 Cal. 4th at 1256 (1994).  Here, the public

11  policy upon which plaintiff bases her claim of termination in violation of public policy is the

12  policy in FEHA against discrimination on the basis of sex and disability.

13      The court finds that summary judgment must be GRANTED.  Plaintiff's original claim

14  of disability discrimination was dismissed for failure to exhaust administrative remedies,

15  and plaintiff has provided no evidence that she was terminated because of an alleged

16  disability.  As for the claim of termination based on sex discrimination, summary judgment

17  is being granted as to the claim, for the reasons stated above.  In the absence of any

18  evidence of discrimination, plaintiff cannot maintain a claim for wrongful termination in

19  violation of that public policy.  <u>See</u> <u>Sneddon v. ABF Freight Sys.</u>, 489 F.Supp. 2d 1124,

20  1131 (S.D. Cal. 2007).

21      4.      Claim of failure to prevent discrimination and harassment (third cause of

22              action)

23      Rite Aid argues that the evidence shows that it had policies in place designed to

24  prevent discrimination and harassment, and that it took decisive action after plaintiff

25  complained about the Photo Department incident, and that the claim of failure to prevent

26  discrimination and harassment therefore fails.

27      Under FEHA, it is an unlawful employment practice for an employer to fail to take all

28  reasonable steps necessary to prevent discrimination or harassment from occurring.  Cal.

14

United States District Court

For the Northern District of California

1    Gov't Code § 12940(k).  Reasonable steps an employer may take include the

2    establishment of anti-discrimination policies, implementation of effective procedures to

3    handle complaints and grievances regarding discrimination, and prompt investigation of

4    discrimination complaints to prevent further discrimination.  California Fair Empl. & Housing

5    Com'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1025 (2004).  In the absence of

6    a showing of discrimination or harassment, no claim lies for the failure to prevent

7    discrimination or harassment.  Trujillo v. North County Trans. Dist., 63 Cal. App. 4th 280,

8    289 (1998).

9         The court finds that summary judgment must be GRANTED as to the claim of failure

10   to prevent discrimination, as plaintiff has no evidence of discrimination.  However, because

11   (as indicated below) triable issues exist with regard to the cause of action for harassment,

12   and because the evidence shows that Rite Aid was on notice of Young's objectionable

13   actions and comments well before the Photo Department incident, the court finds that

14   triable issues also exist with regard to the claim of failure to prevent harassment.  Thus, the

15   motion is DENIED as to that claim.

16        5.    Claims of assault, battery, sexual battery, and invasion of privacy (seventh,

17              eighth, ninth, and eleventh causes of action)

18        Rite Aid argues that the claims of assault, battery, sexual battery, and invasion of

19   privacy are time-barred.  These claims are all based on the July 6, 2005 Photo Department

20   incident, which occurred well over two years before the filing of the present action.  Under

21   California Civil Code § 335.1, tort claims in California are subject to a two-year statute of

22   limitations.  Plaintiff argues, however, that the tort claims were "equitably tolled" by the filing

23   of the DFEH charge.

24        A claim that a cause of action is barred by the statute of limitations is an affirmative

25   defense.  Wyatt v. Terhune, 315 F.3d 1108, 1117-18 (9th Cir. 2003); Aerojet Gen'l Corp. v.

26   Superior Court, 177 Cal. App. 3d 950, 953 (1986).  Ordinarily, a defendant moving for

27   summary judgment based on an affirmative defense must establish all the essential

28   elements of the defense to warrant judgment in its favor.  See Clark v. Capital Credit &

15

United States District Court
For the Northern District of California

1  Collection Servs., 460 F.3d 1162, 1177 (9th Cir. 2006).

2      However, where a plaintiff contends that the statute of limitations is not a bar, based

3  on equitable tolling, it is the plaintiff's burden to plead and prove that limitations period

4  should be tolled.  See Judelson v. American Metal Bearing Co., 89 Cal. App. 2d 256, 266

5  (1948) (when a plaintiff's claim depends upon equitable estoppel, "it must be pleaded in the

6  complaint with sufficient accuracy to disclose the facts relied upon and the plaintiff must

7  prove all of the elements constituting it"), quoted in Fanucci v. Allstate Ins. Co., 2009 WL

8  1883764 at *9 (N.D. Cal., June 30, 2009); see also United States v. Marolf, 173 F.3d 1213,

9  1218 n. 3 (9th Cir. 1999) ("[t]he burden is on [a] plaintiff to show that equitable tolling is

10  appropriate").

11      The equitable tolling of statutes of limitations is a judicially created, nonstatutory

12  doctrine.  Where applicable, the doctrine will "suspend or extend a statute of limitations as

13  necessary to ensure fundamental practicality and fairness."  McDonald v. Antelope Valley

14  Community College Dist., 45 Cal. 4th 88, 99 (2008).  "Broadly speaking, the doctrine

15  applies when an injured person has several legal remedies and, reasonably and in good

16  faith, pursues one."  Id. at 100 (internal quotation marks and brackets omitted); see also

17  Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (equitable tolling relieves

18  the plaintiff from the bar of the statute of limitations when, possessing several legal

19  remedies, he, reasonably and in good faith, pursues one designed to lessen the extent of

20  his injuries or damage).

21      California courts have developed a three-pronged test for invocation of the doctrine

22  of equitable tolling.  A plaintiff's pursuit of a remedy in another forum equitably tolls the

23  limitations period if the plaintiff's actions satisfy these three factors:  (1) timely notice to the

24  defendants in filing the first claim; (2) lack of prejudice to the defendants in gathering

25  evidence for the second claim; and (3) good faith and reasonable conduct in filing the

26  second claim.  Cervantes, 5 F.3d at 1275.  Application of the three-part test is "mandatory."

27  Id. at 1275-76.

28      The "timely notice" requirement means that the plaintiff's first claim must have been

16

filed within the statutory period.  In addition, the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim.  "Generally this means that the defendant in the first claim is the same one being sued in the second."  McDonald, 45 Cal. 4th at 102 n.2.  Here, Rite Aid is the defendant in both the DFEH claim and the state tort claims, so this requirement is arguably satisfied.

The second prerequisite amounts to "a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second."  Id.  Here, the claims raised in the DFEH charge were sexual discrimination – specifically, sexual harassment.  The state tort claims alleged in this action are assault, battery, and invasion of privacy.

In filing the DFEH charge, plaintiff was not pursuing legal remedies for assault, battery, or invasion of privacy.  Thus, this is not a matter of a plaintiff having several legal remedies, and in good faith, electing to pursue one.  Moreover, DFEH could not grant relief for such tort claims.  The DFEH's job is simply to assess the employer's liability for violations of FEHA, not violations of state tort law.

The third prerequisite of good faith and reasonable conduct on the part of the plaintiff "is less clearly defined in the cases."  Id.  Here, plaintiff filed the present action more than a year and nine months after filing the DFEH charge, which in turn was eleven months after the incidents complained of.

Because plaintiff failed to plead equitable tolling in the FAC, and also because she cannot meet the second factor of the three-part test, equitable tolling does not apply to extend the limitations period as to the assault, battery, and invasion of privacy claims.  Accordingly, the motion is GRANTED, as the tort claims are time-barred.  The Photo Department incident occurred on July 6, 2005, and plaintiff filed the present action on March 19, 2008, more than two years and eight months later.

6.      Claim of intentional infliction of emotional distress (tenth cause of action)

Rite Aid argues that the claim of intentional infliction of emotional distress ("IIED") is

17

United States District Court

For the Northern District of California

1    barred by its second and fourth affirmative defenses.  Rite Aid contends that its second

2    affirmative defense – statute of limitations – precludes an IIED claim based on any incident

3    that predated March 2006 (two years before the filing of the present action).  All the

4    incidents alleged to have caused plaintiff's emotional distress (referenced in plaintiff's

5    responses to interrogatories) pre-date March 2006.  As with the claims for assault, battery,

6    and invasion of privacy, however, plaintiff asserts that the IIED statute of limitations should

7    be equitably tolled.

8        Rite Aid also asserts that its fourth affirmative defense – the exclusivity of the

9    worker's compensation remedy – precludes an IIED claim as to plaintiff's termination, or as

10   to Rite Aid's alleged refusal to transfer her to the Eureka store, refusal to pay all her

11   therapy bills, and "allowance" of various indignities from plaintiff's former co-workers.  Rite

12   Aid contends that emotional distress damages from an employer's conduct that is a normal

13   part of the employment relationship – including termination and criticism – is barred by the

14   rule of worker's compensation exclusivity.

15       The court finds that the motion must be GRANTED.  As an initial matter, the IIED

16   claim is barred by the rule of worker's compensation exclusivity insofar as plaintiff asserts

17   that she suffered emotional distress as a result of her termination, Rite Aid's alleged refusal

18   to transfer her to the Eureka store, its refusal to pay her therapy bills, and its "allowance" of

19   various acts by the Fortuna store employees.

20       There is no independent recovery for intentional infliction of emotional distress in

21   the employment arena because that injury comes under the exclusive remedy of worker's

22   compensation law.  Mueller v. County of Los Angeles, 176 Cal. App. 4th 809, 823 (2009).

23   Under California Labor Code § 3600(a), workers' compensation liability, "in lieu of any other

24   liability whatsoever" will exist "against an employer for any injury sustained by his or her

25   employees arising out of and in the course of the employment."  See Fermino v. Fedco,

26   Inc., 7 Cal. 4th 701, 708 (1994).

27       "The exclusive remedy applies even when the damages result from intentional

28   conduct by the employer that is a normal part of employment relationships, and even

18

United States District Court

For the Northern District of California

1   though such conduct may be described as egregious, harassment, manifestly unfair, or

2   intended to cause emotional distress." <u>Mueller</u>, 176 Cal. App. 4th at 823 (citing <u>Shoemaker</u>

3   <u>v. Myers</u>, 52 Cal. 3d 1, 15, 25 (1990)).

4          To the extent that plaintiff alleges intentional infliction of emotional distress in

5   connection with the alleged harassment, or the alleged failure by Rite Aid to take action to

6   prevent harassment, those claims cannot be considered to be based on the normal

7   employment relationship.  <u>See</u>, <u>e.g.</u>, <u>Hart v. National Mortgage & Land Co.</u>, 189 Cal. App.

8   3d 1420, 1430 (1987); <u>see also</u> <u>Accardi v. Superior Court</u>, 17 Cal. App. 4th 341, 353 (1993)

9   (claim for emotional and psychological damage arising out of employment is not barred by

10  Workers' Compensation Act, where distress is engendered by employer's illegal

11  discrimination and sexual harassment).

12         Nevertheless, an IIED claim based on those allegations would be time-barred, as

13  explained in the above discussion of the assault, battery, and invasion of privacy claims,

14  and plaintiff has not met her burden of pleading and proving that equitable tolling applies.

15         7.      Sexual harassment claim (first cause of action)

16         Rite Aid argues that plaintiff cannot prevail on her sexual harassment claim, as

17  Young was not a supervisor as defined by FEHA, and Rite Aid had no knowledge of any

18  harassing conduct by Young prior to the Photo Department incident.  Moreover, Rite Aid

19  asserts, even if the court finds an issue of material fact as to whether Young was a FEHA

20  supervisor, none of his conduct objectively altered the workplace.

21         FEHA imposes "two standards of employer liability for sexual harassment,

22  depending on whether the person engaging in the harassment is the victim's supervisor or

23  a nonsupervisory employee."  <u>State Dept. of Health Servs. v. Superior Court</u>, 31 Cal. 4th

24  1026, 1040-41 (2003).  Harassment of one employee by another employee (not an agent

25  or supervisor) is unlawful only if the entity, or its agents or supervisors, knows or should

26  have known of this conduct and fails to take immediate and appropriate corrective action.

27  Cal. Gov't Code § 12940(j)(1).  However, FEHA provides that an employer is strictly liable

28  for harassment perpetrated by its supervisors and agents.  <u>Chapman v. Enos</u>, 116 Cal.

United States District Court
For the Northern District of California

1   App. 4th 920, 928 (2004).

2        A "supervisor" under FEHA is "any individual" with "the authority" on behalf of the

3   employer

> to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward,
> or discipline other employees, or the responsibility to direct them, or to adjust
> their grievances, or effectively to recommend that action, if, in connection with
> the foregoing, the exercise of that authority is not of a merely routine or
> clerical nature, but requires the use of independent judgment

7   Cal. Gov't Code § 12926(r).  The court must construe the FEHA definition broadly so as to

8   protect employees' rights to seek and hold employment without discrimination.  Chapman,

9   116 Cal. App. 4th at 931.

10        Rite Aid argues that Young was not a "supervisor" under this definition, as he did not

11   direct her work on a daily basis, but only when either the Store Manager or the Assistant

12   Manager were not on the store premises, and he had no input into plaintiff's performance

13   evaluations, and could not approve or set vacation days or schedules.  Rite Aid also

14   asserts that it has no liability for any harassment perpetrated by Young because it had no

15   knowledge of prior harassing conduct, and because it took swift corrective measures

16   following the Photo Department incident.

17        Rite Aid also contends that plaintiff cannot prevail on this claim, even if Young is

18   considered a supervisor, or even if plaintiff can establish that Rite Aid knew about the

19   alleged harassment, because plaintiff cannot establish a prima facie case of hostile work

20   environment harassment.

21        Sexual harassment is a form of gender discrimination.  Brooks v. City of San Mateo,

22   229 F.3d 917, 923 (9th Cir. 2000).  Sexual harassment falls into two major categories –

23   hostile work environment and quid pro quo.  Id.  A hostile work environment claim involves

24   a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with

25   the job performance of those harassed.  Id.

26        To establish a prima facie case of a hostile work environment, plaintiff must show

27   that she was subjected to verbal or physical conduct of a sexual nature, that the conduct

28   was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the

United States District Court

For the Northern District of California

1   conditions of her employment and create an abusive working environment.  See Fuller v.

2   City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995); see also Brooks, 229 F.3d at 923 n.3

3   (courts look to the interpretation of Title VII in construing FEHA); Reno v. Baird, 18 Cal. 4th

4   640, 646-47 (1998).

5        Additionally, "[t]he working environment must both subjectively and objectively be

6   perceived as abusive."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 20-21 (1993).  Objective

7   hostility is determined by examining the totality of the circumstances and whether a

8   reasonable person with the same characteristics as the victim would perceive the

9   workplace as hostile.  Id.  In addition, the conduct must be so extreme as to amount to a

10  change in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524

11  U.S. 775, 788 (1998); see also Fuller, 47 F.3d at 1527.

12       FEHA employs the "reasonable victim" standard for the "objective test" – that is,

13  whether a reasonable woman would consider the harassment sufficiently severe or

14  pervasive to alter the conditions of employment and create an abusive working

15  environment.  Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 609 (1989);

16  Harris, 510 U.S. at 923.

17       The circumstances examined to determine whether harassment is objectively severe

18  and pervasive include the frequency of the discriminatory conduct; the severity of the

19  conduct; whether it is physically threatening or humiliating; or "merely offensive;" and

20  whether it unreasonably interferes with an employee's work performance.  Harris, 510 U.S.

21  at 23; Yanowitz, 36 Cal. 4th at 1053; see also Faragher, 524 U.S. at 788 ("the ordinary

22  tribulations of the workplace, such as sporadic use of abusive language, gender-related

23  jokes, and occasional teasing" do not constitute actionable harassment, nor do "isolated

24  incidents," unless extremely serious).  A single incident generally will not be sufficient

25  unless it is very severe.  Clarke Co. School Dist., 532 U.S. at 271.

26       Here, Rite Aid argues that the conduct of which it knew before plaintiff complained

27  about the Photo Department incident consisted of what it calls "trivial jokes and teasing,"

28  which it asserts did not create a hostile work environment.  Rite Aid concedes that Pough

United States District Court

For the Northern District of California

1   was aware of the "jack-off muscle" comments and the "wood" incident, but argues that such

2   "teasing" and "offhand comments" do not amount to discriminatory changes in the terms

3   and conditions of employment.  Rite Aid notes that there is no evidence that any of the

4   other female employees complained to management about Young's conduct, which Rite

5   Aid asserts demonstrates that they did not consider the workplace to be "detrimentally

6   changed."

7           Moreover, Rite Aid argues, plaintiff has no evidence that she subjectively considered

8   her workplace altered as a result of the "jack-off muscle" comments or the "wood"

9   comment.  Although plaintiff testified that she found the "jack-off muscle" comments to be

10  "creepy," and the "wood" comment as making her feel "weird," Rite Aid points to the fact

11  that plaintiff never complained to Comerer or Shipman about any of Young's conduct

12  before the Photo Department incident, and the fact that she never told Shipman about any

13  of Young's conduct except for the Photo Department incident and the "wood" comment.

14          Moreover, Rite Aid notes, plaintiff never asked not to work with Young, and testified

15  that none of these events merited such a request.  Rite Aid asserts that the only possible

16  conclusion is that plaintiff did not consider Young's misconduct prior to the Photo

17  Department incident sufficiently severe to create an abusive work environment.

18          The court finds that the motion must be DENIED.  Plaintiff meets the first two

19  elements of the prima facie case, as she was subjected to verbal or physical conduct of a

20  sexual nature (the Photo Department incident), and the conduct was unwelcome.  As for

21  whether the incidents of which plaintiff complained – those occurring prior to the Photo

22  Department incident (Young's "ogling" of women who came into the Fortuna store and

23  comments about those same women, his "jack-off muscle" and "wood" comments, his

24  staring at plaintiff's breasts and other comments made to plaintiff) as well as the Photo

25  Department incident itself – were sufficiently severe and pervasive to constitute a hostile

26  work environment, the court finds that triable issues preclude the granting of summary

27  judgment.

28          These triable issues include the question whether Young can be considered a

United States District Court

For the Northern District of California

1    supervisor under FEHA; the question whether Young's behavior was "simply offensive" as

2    opposed to physically threatening or humiliating; and the question whether Young's

3    behavior unreasonably interfered with plaintiff's (or any employee's) work performance.

4              8.     Claim for punitive damages

5              Rite Aid asserts that none of its conduct merits punitive damages because plaintiff

6    has no evidence that Rite Aid engaged in any acts of malice, oppression, or fraud.  Rite Aid

7    reiterates that upon receiving plaintiff's complaint, it immediately investigated, terminated

8    the alleged harasser, and offered plaintiff a transfer to another store.  Rite Aid states that it

9    removed plaintiff from the payroll only when plaintiff failed to provide any indication that she

10   intended to return to work.

11             In opposition, plaintiff argues that Rite Aid is liable for punitive damages because it

12   ratified the wrongful conduct by failing to fully investigate the claims after being informed of

13   the harassing employee's wrongful conduct.  It is not entirely clear, but plaintiff appears to

14   be asserting that because plaintiff complained to the Assistant Manager about the "jack-off

15   muscle" comments, Rite Aid was obligated to investigate, and its failure to do so means it

16   may be liable for punitive damages.

17             The court finds that the motion must be DENIED.  Punitive damages are available

18   under FEHA, see Commodore Home Sys., Inc. v. Superior Court, 32 Cal. 3d 211, 185

19   (1982); Murillo v. Rite Stuff Foods, Inc., 65 Cal. App. 4th 833, 842 (1998); and, as indicated

20   above, triable issues remain as to plaintiff's FEHA claims for sexual harassment and failure

21   to prevent harassment.

22   C.   Rite Aid's Objections to Evidence

23             Rite Aid makes a number of objections to statements in plaintiff's declaration, and to

24   much of the evidence attached to the declaration of counsel.  To the extent that any of the

25   objections are well-taken, the court has not relied on that evidence in ruling on Rite Aid's

26   motion.

27                                    **CONCLUSION**

28             In accordance with the foregoing, the court DENIES summary judgment as to the

causes of action for sexual harassment and failure to prevent sexual harassment, and the claim for punitive damages, and GRANTS summary judgment as to the remaining causes of action.

**IT IS SO ORDERED.**

Dated: September 23, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

**United States District Court**
For the Northern District of California

24